UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| CLAYTON G. WALKER,<br><br>                     Plaintiff,<br><br>vs.<br><br>MG OIL COMPANY, doing business as The Park Restaurant; MARLYN ERICKSON; TROY ERICKSON; JOHN HAYWARD; DON WILLIAMSON; and MICKEY TILLMAN,<br><br>                     Defendants. | 5:25-CV-05029-RAL<br><br><br>ORDER REGARDING PENDING MOTIONS |

Plaintiff Clayton G. Walker filed a pro se lawsuit alleging employment discrimination.[1] Doc. 1. Walker also filed a motion for leave to proceed in forma pauperis. Doc. 2. The defendants filed a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction, Doc. 15, and Walker filed a response, Doc. 18.

## I.     Motion for Leave to Proceed In Forma Pauperis

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. Williams v. McKenzie, 834 F.2d 152, 154

---

[1] In a previous suit initiated by Walker, then Chief Judge Viken issued an order that "the clerk of the court is instructed that any future filings by Clayton Walker must first be approved by a district judge. The district judge will review the pleading and determine whether the pleading will be allowed." Walker v. Yants et al., No. 5:17-CV-05007-JLV, Docket 10 at 3 (D.S.D.). After reviewing Walker's pleading in the current case, this Court will allow Walker to proceed.

(8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983). After review of Walker's financial affidavit, this Court finds that he has insufficient funds to pay the filing fee. Thus, Walker's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

## II.     Facts Pled in the Complaint

This action arises out of Walker's employment at the Park Restaurant, owned by MG Oil Company. Doc. 1 ¶ 2. Walker was employed as a supervisor[2] at the Park Restaurant in Rapid City, South Dakota, from November 18, 2022, to November 10, 2023. Id. Walker states that he "was the only White Male Manager over 40 that worked in the office at the Park and was constantly harassed and teased because of it, all other managers were female and of Hispanic, Black, Native American and Mixed Races in the office, under the ADEA." Id. ¶ 24.

While employed at the Park Restaurant, Walker alleges that he was sexually harassed by his coworkers, Mickey Tillman and John Hayward.[3] Id. ¶ 21. According to Walker, Tillman (the kitchen supervisor) directed obscene gestures toward Walker, and "would use his hands to make sexual comments about having sex with" Walker. Id. ¶ 31. Walker alleges that Tillman also made "unwanted sexual advantages [sic] towards [Walker] on or around 10-23-23." Id. ¶ 33. Walker states that Tillman "was sexually harassing a lot of people, even a girl under the age in 16 [sic], a food runner unknown last name." Id. ¶ 30.

---

[2] Defendants' Brief in Support of Defendants' Motion to Dismiss and Walker's EEOC charge both characterize Walker's position as "floor manager." Doc. 16 at 1; Doc. 17-1.
[3] Throughout his complaint, Walker uses different spellings of these defendants' names. For consistency, this Court will use the spellings Walker provided in his caption. Doc. 1 at 1.

2

In addition to the alleged sexual harassment directed at Walker, Walker also claims that "[s]ex was taking place in the Restaurant by Amanda and a guy by the name of Brad an IT Guy that was sexual [sic] harassing a managers [sic] . . . [Walker] was uncomfortable and it was unwanted and ignored." Id. ¶ 28.

Walker also alleges that John Hayward, the General Manager at the Park Restaurant, discriminated against him based on race and religion. See, e.g., id. ¶¶ 36, 43. Walker claims that he was threatened by Hayward about his "Creed and where [Walker] came from, on 10-9-23 John was a Black, American Indian, and Mexican The Plaintiff believes." Id. ¶ 43. While Walker claims that he was threatened by Hayward, Walker's complaint does not state what those threats were or how they were related to his "Creed" and national origin. Id.

After experiencing this harassment, Walker made various complaints. Id. ¶¶ 20, 22, 30; Doc. 18 at 2. Walker asserts that these complaints were ignored, and that he was retaliated against as a result. Doc. 1 ¶¶ 22, 35 ("The plaintiff received ongoing retaliatory harassment during his employment on or around 2023 after his complaints to the main Office[.]"). Specifically, Walker claims that after his complaints, he "was the only manager that got a pay deduction and demotion."[4] Id. ¶ 32. Walker states that he "was diminished to taking tables after the complaint about sexual harassment, and eventually transferred to the Truck Stop, called the Flying J." Id. ¶ 40; Doc. 18 at 11. Additionally, Walker alleges that Hayward "would use writeups in attempt [sic] to get the plaintiff fired because of his complaints[.]" Doc. 1 ¶ 27. Walker also alleges that Hayward "retaliated against [Walker] by denying promotions" because Hayward promoted another

---

[4] Walker also appears to assert that his pay deduction was attributable to his race and sex: "Other manager [sic] that were nonwhite did not receive a pay deduction, I was the only white male that received a pay deduction." Doc. 1 ¶ 32.

individual "without giving [Walker] the chance or an interview[.]" Id. ¶ 26.[5] When Walker voiced

his concerns to Don Williamson on November 8, 2023, he was "threatened by [Williamson] . . .

that MG Oil had 'Deep pockets' and [Walker] would never win in court if [he] pursued a case

against MG Oil." Id. ¶ 46; Doc. 18 at 11.

Walker also alleges that he "was told he had to pay for his food by Mickey Tillman when

other managers didn't have to[.]" Doc. 1 ¶ 42. Walker claims that Marlyn Erickson (Marlyn)

visited the restaurant when Walker was working with another guest and that they were

"intoxicated, harassing the plaintiff about the prices of the Park," and arguing with Walker with

Marlyn "making false statements that damaged the REPUTATION of the plaintiff." Id. ¶ 38.

Walker also states that Marlyn and Troy Erickson "both failed at supervision creating an unsafe

environment." Id. ¶ 39.

Walker also alleges that MG Oil violated his "Rights [to] Freedom of Religion." Id. ¶ 48.

He appears to claim that he was discriminated against based on his religion, but provides no factual

assertions to support this allegation. Rather, Walker states that he "can prove he is a part of a

protected class including religion, sex, and national origin[,]" and that "Creed threats" were made

against him on November 9, 2023, and that Hayward "threatened" him "about [his] Creed[.]" Id.

¶¶ 43, 44, 46.

---

[5] Walker states that Hayward promoted his boyfriend, Rubin Vidales, an individual of "Mexican and Native Descent[.]" Doc. 1 ¶ 26. While Walker states that his being passed over for the promotion was in retaliation, presumably for the complaints that he made, the statement about Vidales' ethnicity appears to be an attempt to allege racial discrimination as well, taken together with Walker's statement that he faced racial harassment from Hayward, id. ¶ 36. However, Walker also seems to allege that his denial of a promotion was neither in retaliation for his workplace complaints nor an act of racial discrimination, but because Walker "[found] out about Johns [sic] Education Fabrication on his job application and stealing money out of the safe to pay for a wedding they had." Id. ¶ 25.

Walker brings the current action alleging violations of Title VII (including retaliation, harassment, and discrimination) based on religion, sex, and race. Id. ¶¶ 51–62. Additionally, Walker states a violation of the Age Discrimination in Employment Act (ADEA). Id. ¶¶ 63–65. Walker also brings state-law claims for stalking, constructive discharge, and intentional infliction of emotional distress. Id. ¶¶ 66–71. As relief, Walker requests punitive damages "for emotional distress of pain and suffering, inconvenience, reputational harm, emotional stress, physical pain and suffering, loss of enjoyment of life and humiliation; the amount to be determined by a Jury trial." Id. at 10. He also seeks compensatory damages for "back pay, fringe benefits and any other appropriate relief necessary to make [him] whole and compensate him" for the various civil rights violations he claims, as well as "[r]elief of lost wages in the amount to be calculated by the DOL from November 2023 to Oct [sic] 2024[.]" Id. at 10–11. Lastly, he seeks pre- and post-judgment interest and any other relief that the Court deems just, appropriate, and equitable. Id. at 11.

Attached to his complaint, Walker filed a notice of his right to sue from the EEOC, dated December 30, 2024. Doc. 1-1 at 1–3. Walker did not attach his Charge of Discrimination to the complaint, but defense counsel supplied it with her affidavit. Doc. 17-1. The Charge of Discrimination is a document embraced by the pleadings which this Court can consider in ruling on a motion to dismiss.[6]

---

[6] The addition of Walker's EEOC charge in the defendants' motion to dismiss, which was not included in Walker's complaint, does not convert the defendants' motion to dismiss into a motion for summary judgment. In Faibisch v. University of Minnesota, the Eighth Circuit noted that courts may rely on matters within the public record when deciding Rule 12(c) motions to dismiss. Faibisch v. Univ. of Minn., 304 F.3d 797, 802 (8th Cir. 2002). The Eighth Circuit held that an "EEOC charge is part of the public record, and thus the motion to dismiss was not converted to one for summary judgment by the attachment of a copy of the EEOC charge." Id. at 803.

### III.    Discussion

#### A.    Standard on Motion to Dismiss

Defendants MG Oil Company, Marlyn Erickson, Troy Erickson, John Hayward, Don Williamson, and Mickey Tillman filed a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction before this Court was able to conduct a screening of Walker's complaint pursuant to 28 U.S.C. § 1915. Doc. 15. "[C]ourts apply the same standard of review when conducting an initial review of a *pro se* complaint and a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim." Stewart v. Lunzman, 1:23-CV-01010-CBK, 2024 WL 1175806, at *1 (D.S.D. Mar. 19, 2024). See also Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997) (holding that "Federal Rule of Civil Procedure 12(b)(6) standards govern our review of dismissals under section 1915(e)(2)(B)(ii)"), cited with approval in Geitz v. Overall, 62 F. App'x 744, 746 (8th Cir. 2003) (per curiam) and Goodroad v. Bloomberg, 129 F.3d 121 (8th Cir. 1997) (per curiam). Thus, this Court addresses the motion to dismiss in lieu of conducting a § 1915 screening.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint. Neitzke v. Williams, 490 U.S. 319, 326–27 (1989). When considering a Rule 12(b)(6) motion, the facts alleged in the complaint must be considered true, and all inferences must be drawn in favor of the plaintiff, the nonmoving party. Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir. 2004) (citing Stone Motor Co. v. Gen. Motors Corp., 293 F.3d 456, 464 (8th Cir. 2002)). To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). But "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' . . . a claim must be dismissed[.]" Neitzke, 490 U.S at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). "At the very least, . . . the complaint must contain facts which state a claim as a matter of law and must not be conclusory." Strand, 380 F.3d at 317 (citing Frey v. Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995)).

The defendants argue that Walker's complaint should be dismissed for two primary reasons. First, defendants assert that Walker failed to exhaust his administrative remedies when he filed a "wholly inadequate" charge of discrimination with the EEOC, meaning that this Court lacks subject matter jurisdiction to hear his claims. Doc. 16 at 3–4. Second, the defendants argue that Walker's complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Id. at 4. This Court will address each of these arguments in turn.

**B.     Whether Walker Has Exhausted Administrative Remedies**

Walker alleges violations of his rights under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA") based on the alleged disparate treatment he suffered as "the only White Male Manager over 40 that worked in the office at the Park[.]" Doc. 1 ¶ 24. Title VII prohibits an employer from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). The ADEA "broadly prohibits arbitrary discrimination in the workplace based on age[,]" Lorillard v. Pons, 434 U.S. 575, 577 (1978), and "proscribes differential treatment of older workers 'with respect to

. . . [a] privileg[e] of employment.'" <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 120 (1985) (alterations in original).

To exhaust administrative remedies when filing a Title VII or ADEA claim, "an individual must: (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue." <u>Rush v. State Ark. DWS</u>, 876 F.3d 1123, 1125 (8th Cir. 2017) (citing 42 U.S.C. § 2000e-5(b), (c), (e)). The charge should include enough information so that it is possible to provide "notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice)" upon the person against whom such charge is made. 42 U.S.C. § 2000e-5(e)(1).

Walker attached a right-to-sue letter issued on December 30, 2024. Doc. 1-1 at 1–3. Walker filed this lawsuit on March 25, 2025, which falls within the 90-day period. Doc. 1. Walker accurately alleges that he has timely filed his complaint after the EEOC right-to-sue letter. <u>Id.</u> ¶ 6; see <u>Brooks v. Midwest Heart Grp.</u>, 655 F.3d 796, 801 (8th Cir. 2011) ("[T]he statement in [the plaintiff's] complaint that she 'timely filed charges of Employment Discrimination before the US EEOC' was sufficient to meet the liberal pleading standard of Rule 8(a).").

Walker's charge, provided with the Affidavit of Heather Lammers Bogard, Doc. 17-1, lists MG Oil as the employer or employment agency that he believed discriminated against him. <u>Id.</u> at 1. Walker states in his charge that the discrimination took place from September 1, 2023, to November 8, 2023, and that he was discriminated based on "Age, Color, Equal Pay, Race, Religion, Retaliation, Sex[.]" <u>Id.</u> The entire substance of Walker's charge is:

I.    INDIVIDUAL HARM: I was paid less than similarly situated younger female employees, I was demoted, I was harassed, I was sexually harassed, and I was discharged.

II.   RATIONAL BASIS: I believe I have been discriminated against and retaliated against on the basis of my age in violation of the Age Discrimination in Employment Act of 1967, as amended, my sex, male, in

violation of the Equal Pay Act of 1963, as amended and my race, White,
color, religion, and sex, in violation of Title VII of the Civil Rights Act of
1964, as amended, for the following reasons:

1.    I was employed with Respondent as a Floor Manager.
2.    I was sexually harassed by a kitchen manager named Micky Tilman,
      in September and October 2023. Mr. Tilman would use his hands to
      make sexual comments about having sex with me. Mr. Tilman
      would also use unwanted sexual language towards me.
3.    In September and October 2023, I reported the sexual harassment to
      other Managers and my Supervisor Trish Stevenson. My reports
      were ignored.
4.    After reporting the sexual harassment, I was subjected to a demotion
      and lower pay.
5.    Female Floor Managers were paid more than me.
6.    I was the only White, male manager. I was constantly harassed and
      teased because of it.
7.    All the other managers were female and of Hispanic, Black, Native
      American and mixed races.
8.    I was the only manager who received a pay deduction.
9.    On November 8, 2023, Respondent terminated my employment.  I
      believe I was terminated in retaliation for reporting sexual
      harassment.

Id. at 1–2.

The defendants argue that Walker asserts matters in his complaint that were not raised in

his EEOC charge. Doc. 16 at 7.  In their motion to dismiss, the defendants argue that Walker's

charge did not provide facts with enough specificity to afford the EEOC the ability to investigate

his claims, and therefore "did not place the EEOC (or Defendants for that matter) on notice that

Plaintiff was asserting [the claims in his complaint.]" Id. at 8.  The defendants list the following

allegations that were raised in Walker's complaint, but not in his charge with the EEOC: "Plaintiff

makes a long list of allegations in his Complaint that were not included in his Charge, such as an

unsafe work environment, employees having sex at work, others being sexually harassed, receiving

threats, lack of supervision, and intentional infliction of emotional distress." Id. at 7.  Included in

this list are also claims that John Hayward racially harassed Walker and threatened him about his

"Creed," that Marlyn Erickson harassed him, that both Marlyn and Troy Erickson failed to

properly supervise the workplace, and that he was threatened by Don Williamson that any lawsuit initiated by Walker would be unsuccessful because MG Oil has "deep pockets." Doc. 16 at 8 (citing Doc. 1).

"The purpose of filing a charge with the EEOC is to provide the Commission an opportunity to investigate and attempt a resolution of the controversy through conciliation before permitting the aggrieved party to pursue a lawsuit." Cobb v. Stringer, 850 F.2d 356, 359 (8th Cir. 1988). Therefore, "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Bearing in mind the purpose and requirements of the charge, "[t]he breadth of the civil suit is, therefore, as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." Stuart v. Gen. Motors Corp., 217 F.3d 621, 631 (8th Cir. 2000) (citation omitted).

"Because persons filing charges with the EEOC typically lack legal training, those charges must be interpreted with the utmost liberality in order not to frustrate the remedial purposes of Title VII." Cobb, 850 F.2d at 359 (citation omitted). "We do not require that subsequently-filed lawsuits mirror the administrative charges as long as the sweep of any subsequent judicial complaint is no broader than the scope of the EEOC investigation which could reasonably be expected to grow out of the charge filed in the EEOC complaint." Wedow v. City of Kansas City, 442 F.3d 661, 674 (8th Cir. 2006) (citations omitted). "Exhaustion requires a claimant to give notice of all claims of discrimination in the administrative complaint, but administrative complaints are interpreted liberally in an effort to further the remedial purposes of legislation that prohibits unlawful employment practices." Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. 1994).

Case 5:25-cv-05029-RAL    Document 26    Filed 12/05/25    Page 11 of 34 PageID #: 194

While Walker's complaint contains additional allegations and specifically names defendants that were not mentioned in his charge, the allegations in his charge were broad enough to encompass some matters he alleges in his complaint. In their motion to dismiss, the defendants cite several cases where courts ruled that the plaintiff failed to exhaust his or her claims because the charge did not place the EEOC, or the defendants, on notice that the plaintiff was asserting claims in the complaint other than those asserted in the charge. Doc. 16 at 7–9.

For instance, in Parisi v. Boeing Co., the United States Court of Appeals for the Eighth Circuit noted that "there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made." Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005) (citation omitted). In Parisi, the charge the plaintiff filed with the EEOC alleged that his employer "had discriminated against him on the basis of his age in terminating him and in refusing to rehire him for another position." Id. at 584. The plaintiff's charge "specifically mentioned only one incident in which he applied for a position [with his employer] and was rejected." Id. The plaintiff's complaint, however, provided that "[s]ince Plaintiff's termination, he has repeatedly applied for other positions with Defendant Boeing and has been repeatedly denied employment, often losing the position to individuals who are younger and less qualified." Id. The Eighth Circuit ruled that because "a refusal to hire or rehire is a discrete employment action, [the plaintiff] could have identified . . . each refusal to rehire that he contends was based upon unlawful age discrimination." Id. at 586. Therefore, the Eighth Circuit held that the additional claims in the plaintiff's complaint were not "like or reasonably related to the claims in his administrative charge[,]" and ruled that he had failed to exhaust his administrative remedies. Id.

11

In Mann v. Tyson Fresh Meats, Inc., "the only box that was checked [on the plaintiff's charge] indicating a basis of discrimination was 'Retaliation'" but his complaint included an allegation of "a hostile work environment predicated upon sexual discrimination and harassment[.]" Mann v. Tyson Fresh Meats, Inc., 08-CV-4010-LLP, 2008 U.S. Dist. LEXIS 73893, at *14 (D.S.D. Sept. 24, 2008). The court held that the plaintiff failed to exhaust his administrative remedies because checking a box for "retaliation" was not enough to "place an administrative agency on notice of a *present charge* of discrimination." Id. at 16 (emphasis added) (citation omitted).

In Faibisch v. University of Minnesota, the plaintiff "checked the box indicating sex discrimination" on her EEOC charge. Faibisch, 304 F.3d at 803. But the plaintiff "set forth no facts in the EEOC charge that established any connection between the alleged gender discrimination and her termination[,]" and instead followed her statement of sex discrimination with "a long, particularized account of the alleged disability-based discrimination[.]" Id. The Eighth Circuit noted that the plaintiff "may not make a conclusory statement of sex discrimination in the charge and then file suit on whatever facts or legal theory she may later decide upon." Id.

The defendants also cite to Tart v. Hill Behan Lumber Co., where the plaintiff's charge alleged discriminatory discharge, but his complaint included a claim of racial harassment. Tart, 31 F.3d at 672. After an assessment of the facts, the Eighth Circuit held that the plaintiff failed to exhaust his administrative remedies because "[a]ll of the alleged incidents of racial harassment were separate in time and distinct in kind from the incident which preceded [the plaintiff's] discharge." Id. at 673. Unlike in Tart, the harassment, discrimination, and retaliation claims Walker alleges in his charge and complaint all occurred from September to November of 2023 and arise out of the same set of operative facts. See generally Doc. 1.

12

Walker's Charge of Discrimination does not contain much detail but does allege sexual harassment violating Title VII during his employment with MG Oil by kitchen manager, Mickey Tillman and supervisors[7] ignoring Walker's report of the sexual harassment. Doc. 17-1 at 1. Walker's Charge also states that he was demoted, subjected to lower pay, and terminated after reporting the sexual harassment. Id. at 2. Walker's Charge also alleges that he was discriminated against by receiving lower pay and, read liberally, demoted at MG Oil because he is a white male. Id. But that is it. Only those matters are "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Walker's Charge does not allege a hostile work environment other than from sexual harassment directed at him, nor discrimination based on his age, religion, or national origin (other than being a white male). Walker's Charge does not mention any of the individual defendants other than Mickey Tillman. Therefore, Walker has only exhausted administrative remedies for claims under Title VII for sexual harassment, retaliation for reporting sexual harassment, and discrimination against him as a white male. This Court now turns to whether Walker's complaint should be dismissed for failure to state a claim upon which relief may be granted.

### C.    Whether Walker has Stated Claims

#### 1.    Claims Under Title VII

As an initial matter, Walker cannot assert Title VII claims against individual defendants in their individual capacities. The Eighth Circuit has held that "a Title VII plaintiff [cannot] hold co-workers liable in their individual capacities under Title VII even though such co-workers might be considered agents of their employer[]" because an individual is not an "employer" for purposes of

---

[7] The only supervisor that Walker mentions in his charge is not one of the defendants named in his suit. Doc. 17-1.

13

Title VII. <u>Lenhardt v. Basic Inst. of Tech., Inc.</u>, 55 F.3d 377, 380 (8th Cir. 1995) (referencing

<u>Smith v. St. Bernards Reg'l Med. Ctr.</u>, 19 F.3d 1254, 1255 (8th Cir. 1994)). As for supervisor

liability, the Eighth Circuit noted that it "has squarely held that supervisors may not be held

individually liable under Title VII[.]" <u>Bonomolo-Hagen v. Clay Cen.-Everly Cmty. Sch. Dist.</u>,

121 F.3d 446, 447 (8th Cir. 1997) (per curiam). Therefore, this Court will analyze Walker's Title

VII claims only as applicable to MG Oil.

Broadly, "Title VII makes it unlawful for an employer 'to fail or refuse to hire or to

discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin.'" <u>Muldrow v. City of St. Louis</u>, 601 U.S. 346, 354 (2024)

(citing § 2000e-2(a)(1)). Walker exhausted a Title VII claim for discrimination against him as a

white male and claims for sexual harassment and retaliation for reporting that harassment.

Walker also references SDCL Chapter 20-13, stating that "[i]t is discriminatory practice

for a person to discriminate on national Origin, and unequal treatment, and promotions." Doc. 1

¶ 68. While Walker does not cite to a specific section of Chapter 20-13, he is presumably referring

to SDCL § 20-13-10, which provides:

> It is an unfair or discriminatory practice for any person, because of race, color,
> creed, religion, sex, ancestry, disability, or national origin, to fail or refuse to hire,
> to discharge an employee, or to accord adverse or unequal treatment to any person,
> employee, or intern with respect to application, hiring, training, apprenticeship,
> tenure, promotion, upgrading, compensation, layoff, or any term or condition of
> employment.

SDCL § 20-13-10. "Because South Dakota courts examine claims under SDCL § 20-13-10 under

a standard identical to that applied to Title VII claims, the court applies the same analysis to each

of [the plaintiff's] sex discrimination claims." <u>Deyo v. Security First Bank</u>, 5:23-CV-0512-KES,

2025 WL 775792, at *4 (D.S.D. Mar. 11, 2025) (internal citation and quotation omitted). <u>See also</u>

14

Huck v. McCain Foods, 479 N.W.2d 167, 169 (S.D. 1991) (noting that "SDCL 20-13-10 is comparable to the corresponding provision in Title VII"). To the extent that Walker was attempting to assert a claim under SDCL § 20-13-10 in addition to Title VII, this Court will apply the same analysis when evaluating Walker's claims under both provisions.

The Eighth Circuit has made clear that a plaintiff bringing a Title VII claim must either demonstrate "direct evidence of discrimination, where the term 'direct' 'refers to the causal strength of the proof' proffered by the employee[,]" or must "creat[e] the requisite inference of unlawful discrimination through the McDonnell Douglas [framework]." Martinez-Medina v. Rollins, 144 F.4th 1091, 1096 (8th Cir. 2025) (alteration in original) (citing Torgerson v. City of Rochester, 643 F.3d 1031, 1044 (8th Cir. 2011) (en banc)). When there is no direct evidence to support the plaintiff's Title VII claims, the Eighth Circuit applies the McDonnell Douglas burden-shifting framework. Watson v. McDonough, 996 F.3d 850, 854 (8th Cir. 2021). Under the three-step McDonnell Douglas framework, the first step requires that the plaintiff bear the initial burden of establishing a prima facie case for each claim. Id. Successfully meeting the first step "creates a rebuttable presumption of discrimination and shifts the burden to the defendant to produce a legitimate, nondiscriminatory reason for its decision. If the defendant manages to do so, the presumption disappears, and the burden returns to the plaintiff to prove that the proffered reason was pretext for discrimination." Id. (internal citations and quotations omitted). At the pleading stage, a plaintiff need only allege facts to support a claim.

### a.    Disparate Treatment Claims

Walker does not allege direct evidence of discrimination, but alleges what may constitute disparate treatment under McDonnell Douglas. Martinez-Medina, 144 F.4th at 1096 (citation omitted). To establish a prima facie case for disparate treatment, the employee must prove: "(1)

that he is a member of a protected class; (2) that he was qualified for his position and performed his duties adequately; and (3) that he suffered an adverse employment action under circumstances that would permit the court to infer that unlawful discrimination was involved." Sallis v. Univ. of Minn., 408 F.3d 470, 476 (8th Cir. 2005) (citation omitted). See Ames v. Ohio Dep't of Youth Serv., 605 U.S. 303, 308 (2025) ("Title VII's disparate-treatment provision bars employers from intentionally discriminating against their employees on the basis of race, color, religion, sex, or national origin.") (citing 42 U.S.C. § 2000-2(a)(1)).

Here, Walker's allegations meet the first prong because Title VII protects against discrimination based on race and gender, and Walker claims that he was discriminated against based on fact that he is a white man. Doc. 1 at 5, 8. "As a textual matter, Title VII's disparate-treatment provision draws no distinctions between majority-group plaintiffs and minority-group plaintiffs. Rather, the provision makes it unlawful 'to fail or refuse to hire or to discharge *any individual*, or otherwise to discriminate against *any individual* with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Ames, 605 U.S. at 309–10 (quoting 42 U.S.C. § 2000e-2(a)(1) (emphasis added)). Although a civil rights pro se suit is to be construed liberally, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted).

Walker has not plead many facts about the disparate treatment he allegedly suffered based on his status as a member of a protected class. See Ricci v. DeStefano, 557 U.S. 557, 577 (2009) ("Disparate-treatment cases . . . occur where an employer has 'treated [a] particular person less favorably than others *because of*' a protected trait." (emphasis added)). Walker alleges that he was the only white male manager over 40, Doc. 1 ¶ 24, but did not exhaust any age discrimination

claim in his charge. Walker alleges that he was harassed and teased as a result, id., and alleges

that he was the only manager to get pay deductions and demotions while nonwhite managers did

not, id. ¶ 32. Walker's remaining allegations in the complaint about discrimination against him as

a white male are largely conclusory. Walker fails to allege that he was qualified for his position

and performed his duties adequately. Instead, Walker's complaint alleges that he was passed over

for a promotion so that the general manager's boyfriend could receive the promotion instead, not

because of his status as a white male qualified for the position. Id. at 5. Walker has not alleged

sufficient facts to show that he applied "for an available position for which [he] was qualified, but

was rejected under circumstances which give rise to an inference of unlawful discrimination."

Ames, 605 U.S. at 309 (quoting Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253

(1981)). What remains are very narrow Title VII and SDCL § 20-13-10 claims against MG Oil

that Walker, due to being a white male, was denied pay and benefits and demoted.

### b.    Sexual Harassment Claim

Walker claims that he was harassed and teased because he was a white male manager and

subject to sexual harassment under Title VII. Doc. 1 ¶ 24. According to the Eighth Circuit, "[a]

hostile work environment in contravention of Title VII exists when the workplace is permeated

with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter

the conditions of the victim's employment and create an abusive working environment."

Martinez-Medina, 144 F.4th at 1097 (internal quotation omitted). A plaintiff may establish a prima

facie case for a hostile work environment by showing:

> (1) [he] belongs to a protected group; (2) [he] was subject to unwelcome
> harassment; (3) a casual nexus exists between the harassment and the protected
> group status; (4) the harassment affected a term, condition, or privilege of
> employment; and (5) [his] employer knew or should have known of the harassment
> and failed to take proper action.

Warmington v. Bd. of Regents of Univ. of Minn., 998 F.3d 789, 799 (8th Cir. 2021) (citation omitted). Courts apply the same standard for hostile work environment claims based on sex, religion, and race. See Al-Zubaidy, 406 F.3d at 1038.

Here, Walker satisfies the first prong, as he alleges discrimination based on his race and gender, both protected classes under Title VII. Doc. 1; Muldrow, 601 U.S. at 354. Walker's complaint meets the second prong, as he claims that he was subject to unwelcome harassment. See, e.g., Doc. 1 ¶¶ 24, 28–30, 31, 33, 36. As for the third prong, the Eighth Circuit has ruled that a plaintiff failed to establish "the required causal nexus between the complained of harassment and [her] protected status[]" because the plaintiff offered "little more than speculation and conjecture to make the required connection from the mistreatment she alleges to a gender or race-based animus[.]" Parker v. U.S. Dep't of Agric., 129 F.4th 1104, 1113 (8th Cir. 2025) (citation omitted). "[W]ithout anything more than bare allegations," a plaintiff cannot establish the required nexus to prove harassment claims. Id. (citation omitted). Walker's complaint arguably fails to allege evidence under the third prong. He complains of sexual harassment by the kitchen manager but does not connect that to his status as a white male.

Walker's allegations fail to allege facts to meet the fourth prong. "The standard for demonstrating a hostile work environment under Title VII is demanding, and does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace." Martinez-Medina, 144 F.4th at 1098 (citation omitted). When evaluating whether there is a hostile work environment, the Eighth Circuit considers the totality of the circumstances, and takes into account factors such as the "frequency of the behavior, its severity, whether physical threats are involved, and whether the behavior interferes with a plaintiff's performance on the job." Sandoval v. Am. Bldg. Maint. Indus., Inc., 578 F.3d 787, 801 (8th Cir. 2009) (citations omitted). Courts

also must consider guidance from the Supreme Court, which has "cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment[,]" and that "[e]ven vile or inappropriate behavior may be insufficient to rise to the level of an actionable hostile work environment claim." Warmington, 998 F.3d at 800 (internal citation and quotation omitted). As such, "[a] hostile work environment claim must allege more than a few isolated incidents. The alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment." Id. at 799 (internal citations and quotations omitted).

Here, Walker claims that Tillman directed obscene gestures toward him and that he was "harassed and teased" because of his race and gender. See generally Doc. 1. He also alleges that "[s]ex was taking place in the Restaurant by Amanda and a guy by the name of Brad an IT Guy that was sexual [sic] harassing a manager[,]" that "[a] guy by the name of Gene who worked in the Kitchen was sexual [sic] harassing a girl at the Park Restaurant[,]" and that "Tilman was sexually harassing a lot of people[.]" Id. ¶¶ 28–30. But Walker does not allege that he witnessed these instances, or that they were in any way directed at him. The Eighth Circuit has set a "high threshold" necessary to prove the fourth prong by listing a number of cases where courts found in favor of the employer because the conduct was not objectively and subjectively offensive enough to constitute a hostile work environment:

> Anderson v. Family Dollar Stores of Ark., Inc., 579 F.3d 858, 862–64 (8th Cir. 2009) (affirming summary judgment in favor of the employer when the employee's supervisor rubbed the employee's shoulders weekly for a few months, called her "baby doll," implied that the employee would advance faster if she got along with him, and called her from Florida to tell her she should be in bed with him); Nitsche v. CEO of Osage Valley Elec. Coop., 446 F.3d 841, 843–44, 846 (8th Cir. 2006) (affirming summary judgment in favor of an employer where, over 20 years, a coworker made a myriad of sexual comments to and about the plaintiff, stuck a shovel between the plaintiff's legs and rubbed him with it, authored a belittling and sexually suggestive poem about the plaintiff, showed the plaintiff a Playboy magazine and a pornographic movie, and put snakes and mice in the plaintiff's lunch box); Ottman v. City of Independence, 341 F.3d 751, 755, 760 (8th Cir. 2003)

19

(reversing the denial of a summary judgment and "conclud[ing] the district court erred in finding a triable issue for the jury" where a coworker made sexist and belittling comments to, about, and around the plaintiff "on a weekly, if not daily, basis").

Liles v. C.S. McCrossan, Inc., 851 F.3d 810, 822–23 (8th Cir. 2017).[8] "There is no doubt that these comments and actions [made to Walker] were rude and unpleasant," but as in Liles, Walker's allegations fall short of claiming "that they were so objectively and subjectively offensive that they altered the terms and conditions of [his] employment." Id. at 823–24.

### c.   Racial and Religious Discrimination Claims

Walker provides even fewer factual allegations for his racial and religious discrimination claims than for his sexual discrimination claims. And Walker did not administratively exhaust any religious discrimination claims. His factual allegations are limited to assertions that he was "constantly harassed and teased" because of his race and that he was "threatened by the General Manager John Hayward about [Walker's] Creed and where The Plaintiff came from," presumably a reference to his national origin and/or race, as well as his religion. Doc. 1 ¶¶ 24, 43. As with claims for a hostile work environment based on sex, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Arraleh v. Cnty. of Ramsey, 461 F.3d 967, 979 (8th Cir. 2006) (citation omitted). Walker fails to demonstrate that his workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive[]" to

---

[8] See also McCown v. St. John's Health Sys., 349 F.3d 540, 543 (8th Cir. 2003) (discussing hostile work environments based on same-sex harassment); Linville v. Sears, Roebuck & Co., 335 F.3d 822, 824 (8th Cir. 2003) (per curiam) (finding that employer's backhanding plaintiff in the scrotum and laughing "was probative of crude, gender-specific vulgarity, [but] . . . was not, by itself, probative of gender discrimination"). While Walker mentions Tillman's alleged harassment specifically, he appears to allege harassment by both male and female coworkers, and thus this Court uses the normal framework for opposite-sex harassment.

constitute a hostile work environment based on race or religion. <u>Anderson v. Durham D & M, L.L.C.</u>, 606 F.3d 513, 518 (8th Cir. 2010). Therefore, his claims for a hostile work environment based on sex, race, and religion are dismissed for failure to state a claim upon which relief may be granted.

### d.    Retaliation Claims

Walker claims that he was denied promotions, received pay deductions based on his filing of various complaints, and was ultimately terminated in violation of Title VII.[9] Doc. 1 ¶¶ 26, 27, 32, 35, 40, 42; Doc. 17-1 at 2 ("I believe I was terminated in retaliation for reporting sexual harassment."). Walker does not allege direct evidence of retaliation.[10] Therefore, this Court evaluates Walker's retaliation claim under the <u>McDonnell Douglas</u> framework. <u>See, e.g.</u>, <u>Dryden v. Graves</u>, 785 F. Supp. 3d 563, 573 (D.S.D. 2025). Under this framework, Walker has the initial burden of establishing a prima facie case of retaliation by showing that: "(1) [he] engaged in protected conduct, including opposition to an action prohibited by Title VII; (2) [he] was subjected to an adverse employment action, and (3) there is a causal nexus between the protected conduct and the adverse action." <u>Id.</u> (internal quotation omitted). Walker at all times retains the ultimate burden of proving that an impermissible retaliatory motive was the "but-for cause" of the adverse

---

[9] As stated above, Walker generally cites SDCL Chapter 20-13. Doc. 1 ¶ 68. Relevant to Walker's retaliation claims is SDCL § 20-13-26, which "prohibit[s] an employer from retaliating against an employee who engages in [an] activity protected under [SDCL § 20-13-26]." <u>Deyo</u>, 2025 WL 775792, at *10 (quoting <u>Riggs v. Bennett Cnty. Hosp. & Nursing Home</u>, 915 N.W.2d 156, 159 (S.D. 2018)). As with SDCL § 20-13-10, claims arising under SDCL § 20-13-26 undergo the same analysis as Title VII claims, in this case an analysis under the <u>McDonnell Douglas</u> Framework. <u>See id.</u> at *11.

[10] Direct evidence in the context of retaliation "is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision[.]'" <u>Guimaraes v. SuperValu, Inc.</u>, 674 F.3d 962, 972 (8th Cir. 2012) (quoting <u>Thomas v. First Nat'l Bank of Wynne</u>, 111 F.3d 64, 66 (8th Cir. 1997)).

employment action. <u>Donathan v. Oakley Grain, Inc.</u>, 861 F.3d 735, 739 (8th Cir. 2017) (quoting <u>Univ. of Texas Sw. Med. Ctr. v. Nassar</u>, 570 U.S. 338, 352 (2013)).

A plaintiff may establish the first prong by demonstrating that he either opposed an act of discrimination made unlawful by Title VII or participated in an investigation under Title VII. <u>Dryden</u>, 785 F. Supp. 3d at 573 (citing <u>Lopez v. Whirlpool Corp.</u>, 989 F.3d 656, 664 (8th Cir. 2021)). Here, the alleged retaliation took place after Walker made complaints to the "main Office" and to "managers and [Walker's] Supervisor Trish Stevenson" in 2023, but before he filed a complaint with the EEOC. Doc. 1 ¶ 35; Doc. 17-1 at 1. "When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." <u>Crawford v. Metro. Gov't of Nashville & Davidson Cnty.</u>, 555 U.S. 271, 276 (2009) (citation omitted). To constitute protected activity under Title VII, the complaint must include a complaint of discrimination based on the protected class status, or must include "sufficient facts to raise that inference." <u>Guimaraes</u>, 674 F.3d at 978. Here, Walker's charge and complaint reference reports he made to management regarding sexual harassment, which would constitute protected conduct. <u>See</u> Docs. 1, 17-1 at 1. Therefore, Walker has adequately plead the first prong of the prima facie case for retaliation.

The second prong requires Walker to show that he was subjected to an adverse employment action. <u>Lopez</u>, 989 F.3d at 665. In <u>Muldrow v. City of St. Louis</u>, the Supreme Court "lower[ed] the bar Title VII plaintiffs must meet" and "chang[ed]the legal standard used in any circuit that has previously required 'significant,' 'material,' or 'serious' injury" when establishing an adverse employment action. <u>Muldrow v. City of St. Louis</u>, 601 U.S. 346, 356 n.2 (2024). In light of this decision, the Eighth Circuit defined an adverse employment action as "a disadvantageous change

to the compensation, terms, conditions, or privileges of employment." Cole v. Group Health Plan, Inc., 105 F.4th 1110, 1114 (8th Cir. 2024). "After Muldrow, [a plaintiff] is only required to plead 'some harm respecting an identifiable term or condition of employment.'" Id. (quoting Muldrow, 601 U.S. at 347).

Here, Walker claims that he "was the only manager that got a pay deduction and demotion" and "was diminished to taking tables after the complaint about sexual harassment, and eventually transferred to the Truck Stop[.]" Doc. 1 ¶¶ 27, 32, 40; see also Doc. 18 at 11. Walker also states that he "received ongoing retaliatory harassment during his employment on or around 2023 after his complaints to the main Office[.]" Id. ¶ 35. After Walker "asked for Sexual Harassment classes and training for all employees in a demand letter to MG Oil" on November 13, 2023, he "was told to return his keys to get his last pay check[]" the next day. Id. ¶ 20. In his charge, Walker explicitly states, "I believe I was terminated in retaliation for reporting sexual harassment." Doc. 17-1 at 2. These actions constitute adverse employment actions.

Walker meets the third prong, alleging that his complaints were the but-for cause for his termination. Walker's complaint and charge are inconsistent regarding the alleged adverse employment actions he experienced and the motivation behind them. In his complaint, Walker makes a claim for constructive discharge, which "occurs when an employee resigns after the employer has created an intolerable working environment in a deliberate attempt to compel such a resignation." MacGregor v. Mallinckrodt, Inc., 373 F.3d 923, 928 (8th Cir. 2004). But Walker also states that he "was terminated" and that he "was told to return his keys to get his last pay check" after he asked for sexual harassment classes and training. Doc. 1 ¶ 20, Doc. 17-1 at 2. Additionally, he alleges that he was "the only manager that got a pay deduction and demotion" after his complaints, although he also attributes this to being the only White male at the Park

Restaurant. See Doc. 1 ¶ 32. Taken together, Walker has alleged enough facts that the desire to

retaliate was the but-for cause of his termination as the Eighth Circuit requires. While his

allegations provide several motivations behind his departure (whether he was terminated or

constructively discharged) other than a desire to retaliate against him for his complaints to

management, Walker has alleged enough to meet the third prong of the prima facie case for Title

VII retaliation and retaliation under SDCL § 20-13-26.

### 2. ADEA Claims

Walker also asserts claims under the ADEA based on the alleged discrimination he faced

as an individual over the age of 40.[11] Id. ¶¶ 45, 63–65. "[T]he ADEA prohibits discrimination

against employees, over the age of 40, because of their age." Canning v. Creighton Univ., 995

F.3d 603, 610–11 (8th Cir. 2021) (quoting Tramp v. Associated Underwriters, Inc., 768 F.3d 793,

798 (8th Cir. 2014) (citation omitted)). "To establish a claim under the ADEA, '[a] plaintiff must

prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the

'but-for'' cause of the challenged employer decision.'" Tramp, 768 F.3d at 800 (quoting Gross v.

FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009)). As discussed above, Walker did not

administratively exhaust this claim. His EEOC charge mentioned the ADEA but provided no facts

suggesting to the EEOC that there was an ADEA violation.

Even if he had exhausted in the ADEA claim, what Walker alleged in his complaint is

insufficient to state an ADEA claim. As with Title VII claims, the plaintiff must establish a prima

---

[11] Walker specifically mentions that "MG Oil is Liable in § 501 of the Equal Pay Act., has
discriminated due to age because the plaintiff is over 40." Doc. 1 ¶ 64 (grammar errors in
original). To the extent that Walker intended to state ADEA claims against all defendants,
claims against individual defendants in their individual capacities are inappropriate for the same
reasons as stated above regarding Title VII, supra. See Lenhardt, 55 F.3d at 380 (stating that the
ADEA defines "employer" in a "substantially identical manner" as Title VII).

facie case of unlawful discrimination under the McDonnell Douglas burden-shifting framework in the absence of direct evidence of discrimination. [12] Deyo, 2025 WL 775792, at *4 (citation omitted). To establish a prima facie case for discrimination under the ADEA, a plaintiff "must show [he] (1) was at least over 40 years old; (2) was qualified for [his] job; (3) "suffered an adverse employment action", and (4) "was replaced by someone substantially younger." Id. (quoting Gibson v. Am. Greetings Corp., 670 F.3d 844, 856 (8th Cir. 2012)).

Here, Walker has alleged that he is over 40 years old[13] in that he was born in 1980 to meet the first requirement. Doc. 1 ¶ 45. Even if this Court accepts as true that Walker suffered an adverse employment action by being demoted, receiving a pay deduction, and being transferred to the Flying J, Walker has not met the second and fourth prongs to establish his prima facie case under the ADEA. Regarding the second prong, Walker alleged no facts demonstrating his qualifications for the promotion. As for the fourth prong, Walker alleged no facts that he was replaced by someone substantially younger, but only that he was replaced by his general manager's boyfriend. Id. ¶ 25.

Additionally, a plaintiff "must show by a preponderance of the evidence that age was the 'but-for' cause of the adverse employment action." Deyo, 2025 WL 775792, at *4 (quoting Gross, 557 U.S. at 177). Walker alleges no facts demonstrating that his age was a "but-for" cause of his alleged adverse employment action. Instead, as with his Title VII claims, Walker provides

---

[12] In the context of ADEA claims, direct evidence "is not the converse of circumstantial evidence . . . [but] is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Wade v. Sanford Med. Ctr., 3:16-CV-03034-RAL, 2018 WL 3825904, at *9 (D.S.D. Aug. 10, 2018) (quoting Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 953 (8th Cir. 2012)). Because Walker "lacks evidence that clearly points to the presence of an illegal motive," he lacks direct evidence, and his complaint must be analyzed using the McDonnell Douglas framework. Torgerson, 643 F.3d at 1044.

[13] He did not include this in his EEOC charge.

alternative motivations for his alleged discrimination. See, e.g., Doc. 1 ¶ 25 (claiming he "was moved out of his management status" so his manager's boyfriend could take Walker's position). Therefore, Walker's ADEA claims are dismissed for failure to state a claim upon which relief may be granted.

### 3.    First Amendment Freedom of Religion

Walker did not administratively exhaust any claim for discrimination based on religious practices. In the complaint, he states that "Freedom of Religion is protected by the first Amendment of the United States Constitution" and that "MG Oil Violated [his] Rights Freedom of Religion[.]" Id. at 7, 10  (grammar errors in original).  Walker's First Amendment claim fails to state a claim.

Walker appears to assert a free exercise violation. But Walker asserts these claims against purely private actors. "The principle that *government* may not enact laws that suppress religious belief or practice is so well understood that few violations are recorded in our opinions." Church of Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 523 (1993) (emphasis added). Violations of the First Amendment are limited to violations by state actors, not private entities. See Manhattan Cmty. Access Corp. v. Halleck, 587 U.S. 802, 808–09 (2019) (holding that there is a "fundamental" problem with the plaintiff's First Amendment claim against a private entity). Therefore, Walker's First Amendment claims are dismissed for failure to state a claim upon which relief may be granted.

### 4.    State-Law Claims

Walker also alleges state-law claims for harassment and discrimination under SDCL § 22-19A-1, as well as a state-law claim for constructive discharge. Doc. 1 at 8–10. He also alleges a state-law claim for intentional infliction of emotional distress. Id. ¶ 71. Because federal courts

are courts of limited jurisdiction, see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), this Court must consider whether Walker's complaint involves a dispute or controversy within its jurisdiction. See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A federal court has jurisdiction over two main kinds of cases: "diversity cases—suits between citizens of different States as to any matter valued at more than $75,000. See 28 U.S.C. § 1332(a). And they have power to decide federal–question cases—suits 'arising under' federal law. § 1331." Badgerow v. Walters, 596 U.S. 1, 7 (2022).

Because Walker, a citizen of South Dakota, Doc. 1 ¶ 10, lists defendants that are also South Dakota residents, id. ¶¶ 11–17, he has not established diversity jurisdiction. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) ("diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff") (emphasis in original). Walker also cannot establish federal-question jurisdiction because his claims arising under South Dakota state law do not arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Therefore, this Court would have to exercise supplemental jurisdiction in order to hear Walker's claims. Under 28 U.S.C. § 1367(a), this Court shall have supplemental jurisdiction over all other claims that "form part of the same case or controversy" as the civil action over which this court has original jurisdiction. Walker's state-law claims are part of the same "case or controversy" as his Title VII retaliation claims. Thus, this Court appears to have supplemental jurisdiction over his state-law claims.

### a.    Stalking

Walker's complaint alleges a violation of SDCL § 22-19A-1, stating that "Defendants Conduct in Harassing the plaintiff was substantial and proximate cause of the injuries and damages sustained by MG Oil employees as more set forth and incorporated herein by referenced in this complaint." Doc. 1 ¶¶ 61–62 (capitalization and grammar errors in original). SDCL § 22-19A-1, a South Dakota criminal statute that defines stalking, [14] prohibits:

> (1) Willfully, maliciously, and repeatedly follow[ing] or harass[ing] another person;
> (2) Mak[ing] a credible threat to another person with the intent to place that person in reasonable fear of death or great bodily injury; or
> (3) Willfully, maliciously, and repeatedly harass[ing] another person by means of any verbal, electronic, digital media, mechanical, telegraphic, or written communication.

SDCL § 22-19A-1. The provisions of SDCL Chapter 22-19A define "harass" as "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose." SDCL § 22-19A-4; see also SDCL § 22-19A-5 (defining "course of conduct" as "a pattern of conduct . . . over a period of time, however short, evidencing a continuity of purpose."). The Supreme Court of South Dakota opined that "[t]he law's plainly legitimate purpose is to protect people from being stalked." State v. Asmussen, 668 N.W.2d 725, 730 (S.D. 2003).

---

[14] It is not clear whether SDCL § 22-19A-1 provides Walker a private right of action against the defendants. See Cone v. Orrock, 5:22-CV-05087-RAL, 2023 WL 3721103, at *6 n.2 (D.S.D May 30, 2023); see also Danielson v. Huether, 4:18-CV-04039-RAL, 2021 WL 217706, at *17 (D.S.D. Jan. 21, 2021); Stanley v. Hall, 5:05-CV-05104-KES, 2006 WL 3138824, at *16–17 (D.S.D. Oct. 31, 2006) (denying summary judgment on a stalking claim under SDCL § 22-19A-1 without addressing whether the statute provides a private right of action). Even assuming that Walker does have a private right of action for purposes of addressing the motion to dismiss only, Walker fails to state a claim under the statute.

Walker does not make allegations specific to the stalking violation, but instead incorporates the allegations referenced in his complaint into his claim for stalking. Doc. 1 ¶¶ 60, 62. While his complaint alleges facts regarding sexual harassment and other inappropriate conduct in the workplace, he must do more than re-allege facts from the rest of his complaint to state a claim separate from his Title VII and ADEA claims, especially when those claims fall short of what is prohibited in SDCL § 22-19A-1. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 545 (citation omitted).

Additionally, the allegations Walker does incorporate do not meet the level of harassment that South Dakota courts have found to constitute a violation of SDCL § 22-19A-1. In Schaefer ex rel. S.S. v. Liechti, the Supreme Court of South Dakota affirmed the trial court's holding that the defendant violated Chapter 22-19A when he drove by the plaintiffs' home thirty-five times in one day, "repeatedly followed" the plaintiffs in his truck, and stated that he "should have used a shotgun to solve his problem" with the plaintiffs. Schaefer ex rel. S.S. v. Liechti, 711 N.W.2d 257, 262–63 (S.D. 2006); see also White v. Bain, 752 N.W.2d 203, 207 (S.D. 2008) (affirming the trial court's finding of stalking by harassment when the defendant sent "a series of bellicose letters" to the plaintiffs, and ultimately "committed what was arguably an assault" on the plaintiff). Therefore, Walker's state-law claim for stalking is dismissed for failure to state a claim.

### b.    Constructive Discharge

Walker also alleges a state-law claim for constructive discharge. Doc. 1 ¶¶ 19, 58. Johnson cites Jansen v. Lemmon Fed. Credit Union, 562 N.W.2d 122 (S.D. 1997), presumably intending

to reference retaliation-constructive discharge.[15] Doc. 1 ¶ 58. The Supreme Court of South Dakota described constructive discharge as a "theory of liability [that] allows an employee to sue for wrongful discharge even after the employee voluntarily resigns." Anderson v. First Century Fed. Credit Union, 738 N.W.2d 40, 47 (S.D. 2007) (citing MacGregor v. Mallinckrodt, Inc., 373 F.3d 923, 928 (8th Cir. 2004)). "Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job. . . . The employer's actions must have been intended to force the employee to quit, meaning the employee's resignation must be a reasonably foreseeable consequence of the employer's discriminatory actions." Id. (quoting Phillips v. Taco Bell Corp., 156 F.3d 884, 890 (8th Cir. 1998) (internal citations and quotations omitted)).

Here, Walker provides conflicting accounts of whether he voluntarily resigned. See Doc. 1 ¶ 20 (After Walker "asked for Sexual Harassment classes and training for all employees in a demand letter to MG Oil" on November 13, 2023, he "was told to return his keys to get his last pay check[]" the next day); see also Doc. 17-1 at 2 ( "I believe I was terminated in retaliation for reporting sexual harassment."); but see Doc. 1 ¶ 19 ("the plaintiff started to see himself as Constructive dismissal and this is recognized in South Dakota."). Therefore, Walker has not sufficiently plead that his employer rendered Walker's working conditions sufficiently intolerable to force him to quit his job, and his claims for constructive discharge are dismissed for failure to state a claim.

---

[15] In Jansen, the Supreme Court of South Dakota affirmed the circuit court's holding that the plaintiff failed to exhaust administrative remedies when the Division of Human rights found that her retaliation-constructive discharge claim lacked probable cause, but she then brought the same charge in a civil action "without first successfully appealing the adverse Division ruling[.]" Jansen, 562 N.W.2d at 122.

### c.    Intentional Infliction of Emotional Distress

Walker also states a claim for intentional infliction of emotional distress (IIED).  Doc. 1

¶ 71.  The Supreme Court of South Dakota outlined the elements for a prima facie case of IIED:

> (1) an act by the defendant amounting to extreme and outrageous conduct; (2) intent on the part of the defendant to cause the plaintiff severe emotional distress; (3) the defendant's conduct was the cause-in-fact of plaintiff's distress; and (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct.

Est. of Johnson v. Weber, 898 N.W.2d 718, 726 (S.D. 2017) (quoting Fix v. First State Bank of

Roscoe, 807 N.W.2d 612, 618 (S.D. 2011)).  "For conduct to be 'outrageous,' it must be so extreme

in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized community." Id. (quoting Richardson v. E. River Elec. Power

Coop., 531 N.W.2d 23, 27 (S.D. 1995)).  While the conduct Walker alleges in his complaint was

certainly inappropriate, it does not meet the standard of being "so extreme . . . as to go beyond all

possible bounds of decency[.]" Id.  Further, Walker does not allege that the defendants intended

to cause him severe emotional distress, as required by the second element.  See Petersen v. Sioux

Valley Hosp. Ass'n, 486 N.W.2d 516, 522 (S.D. 1992) (Wuest, J., concurring in part and dissenting

in part).

Lastly, Walker does not provide evidence that he suffered an extreme, disabling emotional

response as a result of the defendants' conduct, as required by the fourth prong.  Walker states that

he suffered "emotional stress[,]" Doc. 1 ¶ 47, and "endured mental suffering[,]" id. ¶ 55.  This is

not enough to meet the high standard for intentional infliction of emotional distress.  See, e.g.,

Citibank (S.D.), N.A. v. Hauff, 668 N.W.2d 528, 536 (S.D. 2003) (behavior including "indignities,

threats, annoyances . . . rough language and occasional acts that are definitely inconsiderate and

unkind . . . were not, however, so extreme in degree as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (internal quotations and citations omitted)).    Therefore, Walker's intentional infliction of emotional distress claims are dismissed without prejudice for failure to state a claim upon which relief may be granted.

### d.    Claims Under SDCL § 27B-8-43

Walker also asserts claims under SDCL §27B-8-43.   Doc. 1 ¶ 59.   In his section titled "Retaliation," Walker cites to SDCL § 27B-8-43 to assert that "an employee may not be retaliated against for filing a complaint.  Id.  However, Walker's reliance on this statute is misplaced, as the purposes of Title 27B are to:

> [E]nhance environments and provide supports to enable persons with developmental disabilities to achieve and maintain physical well-being, personal and professional satisfaction, participation as community members, and safety from abuse, neglect, and exploitation; and to promote and safeguard the human dignity, constitutional and statutory rights, social well-being, and general welfare of all persons with developmental disabilities in the state.

SDCL § 27B-1-14.   Specifically, the provision Walker references states that "[n]o agency, community service provider, facility, or school may retaliate against any staff who reports in good faith suspected abuse, neglect, or exploitation, or against any person with a developmental disability with respect to any report." SDCL § 27B-8-43.  Therefore, Walker does not fall into the class protected by SDCL § 27B-8-43 because he is not a staff member reporting suspected abuse or neglect of a person with a developmental disability.  Therefore, his claims arising under this statute are dismissed for failure to state a claim.

## IV.    Remaining Motions

Walker's motions to seal his application for leave to proceed in forma pauperis, Docs. 8, 9, are granted.  Additionally, Walker filed various motions related to service.  Docs. 3, 20, 21. Because all defendants have appeared through their attorney, and because the defendants did not

raise issues with service in their Rule 12(b) motion to dismiss, defendants cannot now contend that they have not been properly served. Thus, any motions for service are denied as moot. There are also pending motions related to discovery: the defendants' motion to stay, Doc. 23, and Walker's motion for a hearing and oral argument to discuss discovery, Doc. 24. Because discovery will be conducted pursuant to the Order for Discovery Report and Scheduling Information to be issued by this Court, the defendants' motion to stay, Doc. 23, and Walker's motion for a hearing and oral argument, Doc. 24, are denied as moot.

## V.    Conclusion

Accordingly, it is

ORDERED that Walker's motion for leave to proceed in forma pauperis, Doc. 2, is granted. It is further

ORDERED that the defendants' motion to dismiss, Doc. 15, is granted in part and denied in part as follows: the motion to dismiss is denied in part because Walker's SDCL § 20-13-10 and Title VII disparate treatment claim, based on his allegations that he was denied benefits and demoted based on his status as a white male, as well as his claim for Title VII retaliation and retaliation under SDCL § 20-13-26, survive the motion to dismiss against MG Oil only. The motion to dismiss is granted as it pertains to Walker's claims against all defendants arising under Title VII and SDCL § 20-13-10 for discrimination based on religion, as well as his claims under the ADEA, which are dismissed with prejudice for failure to exhaust. The motion to dismiss is also granted in part as to Walker's claims against all defendants for hostile work environment, ADEA claims, First Amendment Free Exercise claims, and remaining state-law claims, which are dismissed without prejudice for failure to state a claim. It is further

ORDERED that Walker's motions to seal existing documents, Docs. 8, 9, are granted.  It is further

ORDERED that Walker's motions related to service, Docs. 3, 20, 21, are denied as moot. It is further

ORDERED that the defendants' motion to stay, Doc. 23, is denied as moot.  It is finally

ORDERED that Walker's motion for a hearing and oral argument to discuss discovery, Doc. 24, is denied as moot.

DATED December 5th, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE